## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

RICHARD BARNETT, WILLIAM E. BENGE,
CHRISTOPHER LEE DUFF, JACOB EDMONDS,
JOHN HEALY, HALEY SMITH, MICHAEL
STOTTLEMIRE, JEFF TABOR, DOUGLAS TROUT,
and ADDISON WOODY on behalf of themselves and
those similarly situated,

        Plaintiffs,

        v.

AMANDA WORLEY, in her official capacity as
Cumberland County General Sessions Judge,


JENNIFER PHILLIPS CROSS, PATRICIA ELDRIDGE
AND GREG WATSON, in their official capacities as
Judicial Commissioners of Cumberland County General
Sessions Court,

        and

CASEY COX, in his official capacity as Cumberland
County Sheriff,

        Defendants.

Case No.

(Class Action)

---

## CLASS ACTION COMPLAINT

### I.   Introduction

The United States Constitution states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Tennessee Constitution is similar: "That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." Several Tennessee statutes address bail: "Before trial, all defendants shall be bailable by sufficient sureties, except for capital offenses where the proof is evident or the presumption

great." "When the defendant has been arrested or held to answer for any bailable offense, the defendant is entitled to be admitted to bail by the committing magistrate . . . ." T.C.A. §39-11-105. T.C.A. §40-11-115(a) states "Any person charged with a bailable offense may, before the magistrate authorized to admit the person to bail, be ordered released pending trial on the person's personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the magistrate." Section 115(b) goes on to state as follows:

> In determining under subsection (a) whether or not a defendant shall be released, and if so, the least restrictive conditions of release that will reasonably ensure the appearance of the defendant as required and the safety of the community, the magistrate must consider any available results of a validated pretrial risk assessment conducted regarding the defendant for use in the jurisdiction and the defendant's financial resources. In making this determination, the magistrate may also consider:
>
> (1) The defendant's length of residence in the community;
> (2) The defendant's employment status;
> (3) The defendant's prior criminal record, including prior releases on recognizance or bail;
> (4) Whether, at the time of being charged with the offense, the defendant was on release pending trial, sentencing, or appeal in connection with another offense;
> (5) The nature of the offense, the apparent probability of conviction, and the likely sentence, insofar as these factors are relevant to the risk of nonappearance;
> (6) Any substance use or mental health issues that would be better addressed in a community-based treatment program; and
> (7) Any other factors indicating the defendant's ties to the community or bearing on the defendant's risk of willful failure to appear.

1. _____ The Cumberland County justice system IGNORES EVERY provision set out above, except that section of T.C.A.§40-11-115(b)(5) which allows the system to consider "the nature of the offense" (while ignoring the rest of the sentence "insofar as these factors are relevant to the risk of nonappearance." In practical effect, Cumberland County operates a three-tier system of pretrial justice. In Cumberland County, people arrested for a criminal offense are either 1) held without bond for a bond hearing before General Session Judge Worley, 2) released on bond (if they can pay their bond) or 3) those who cannot pay their bail money remain in jail for days or weeks before they have any opportunity to contest their pretrial detention, explain that they cannot pay or enter a guilty plea that involves a time

served sentence. How quickly—or whether—a person is released from jail depends on if bond is set and his or her access to money. As a consequence, a large portion of Cumberland County residents are held in jail until they can enter a guilty plea.

2.     Plaintiffs (collectively, "Named Plaintiffs") were recently incarcerated at the Cumberland County Jail for one of 3 reasons:

1) arrest on an attachment and forced to serve a sentence before being able to make bond or appear in front of the general sessions judge,

2) solely because they were being held without a bond being set or

3) were too poor to pay the arbitrarily amount of money bail that the magistrate or judge set (with complete disregard to the statutes set out above).

In no case did Defendants consider releasing any of the Named Plaintiffs on their own recognizance or consider any of the other factors listed in Section 115(b) at the time the money bail amount was set.

3.     Defendants are responsible for discriminatory practices that strip people of their fundamental constitutional rights to pretrial liberty and to freedom from being jailed solely because of their poverty or the Defendants ignoring the law requiring bail to be set. Moreover, Defendants' policies and practices that detain presumptively innocent people prior to trial lack even the most basic procedural protections: a timely individualized hearing, notice of the issues to be determined, the opportunity to present and confront evidence and make arguments at a hearing with counsel, and making findings on the record by clear and convincing evidence that the constitutional standard for pretrial detention has been met. Defendants do not provide any process for incarcerated individuals to contest their jailing until days or weeks have passed. Wealthier individuals who can pay money bail are released immediately. Those unable to pay remain in the jail, at significant cost to taxpayers.

4.      Defendants violate Plaintiffs' rights to substantive and procedural due process, and representation by counsel.

5.      Defendants' unconstitutional policies and practices result in illegal detention of holding individuals without bond as well as widespread pretrial detention based on poverty. Of the more than 225 people locked in Cumberland County Jail on any given day in 2022, an average of approximately 50 percent were awaiting trial.[1]

6.      Wealth-based pretrial detention exacts a heavy human toll.  The standard use of financial conditions of release in a county where one in eight people live in poverty[2] has resulted in a human rights catastrophe in Cumberland County Jail.

7.      Named Plaintiffs bring this lawsuit on behalf of themselves and as representatives of the class of individuals that includes all people who are or will be arrested and charged with criminal offenses and who are or will be detained in the Cumberland County Jail because of Defendants' bail practices. Each Named Plaintiff is currently suffering (or has suffered) unlawful pretrial incarceration due to Defendants' actions.

8.      On behalf of themselves and all others similarly situated, Named Plaintiffs seek a declaration that Defendants' policies and practices violate Plaintiffs' rights to substantive due process, procedural due process, and representation by counsel. Plaintiffs further request that the Court issue appropriate injunctive and declaratory relief that will ensure that individuals in Cumberland County do not remain in jail prior to trial solely because of their poverty, and without the substantive findings and procedural safeguards that the Constitution requires before the government may deprive an individual of pretrial liberty.

---

[1] Jails & Prisons in Cumberland County, Tennessee, htts://countyoffice.org
[2] See U.S. Census Bureau, American FactFinder, Poverty Status in the Past 12 Months: 2017-2021 American Community Survey 5-year Estimates, Cumberland County, TN
https://www.census.gov/quickfacts/fact/table/cumberlandcountytennessee/IPE120221

9.      Plaintiffs further ask that this Court grant their Motions for Temporary Restraining Order and Class-wide Preliminary Injunction and order Defendant Sheriff to cease enforcing unlawful orders to hold persons without bond (or for a bond hearing) or to hold persons to pay financial conditions of pretrial release against Plaintiffs unless Defendants Judge Worley and the Judicial Commissioners cease illegally holding persons without bond and create a system to set bonds that complies with Tennessee statutes which focus on the Defendant (instead of the crime) and provide Plaintiffs constitutionally compliant initial bail settings and bail hearings.

## II.      Jurisdiction and Venue

12.      This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. § 2201, *et seq.*, and the Fourteenth and Sixth Amendments to the United States Constitution. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 2201 (Declaratory Judgment Act).

13.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391.

## III.      Parties and Facts

14.      **Plaintiff Richard Lynn Barnett** is a 50-year-old man. As indicated on the affidavit of complaint (also known as a warrant) signed by Jennifer Philips Cross, he was arrested and held without bond in the Cumberland County Jail for four (4) days and three (3) nights and was only released when Judge Worley set a $2500 bond on his 4th day of incarceration and he was able to make the cash money bond.  Mr. Barnett lives in Cumberland County, Tennessee. Ex. 1

15.      **Plaintiff William E. Benge** is a 35-year-old man. He was arrested on November 17, 2022 and Magistrate Greg Watson set a total bond for him at $6500; on December 15, 2022, he was still incarcerated.  At his initial appearance before Judge Worley, Judge Worley asked if

Plaintiff Benge would make his bond to which Plaintiff Benge responded "No"—Judge Worley responded with "The bond is appropriate for the offense." Mr. Benge lives in Cumberland County, Tennessee. Mr. Benge eventually made his bond and is out of jail. Ex. 2

16. **Plaintiff Christopher Lee Duff** is a 33-year-old man. He was arrested on a warrant signed by Magistrate Jennifer Phillips Cross and held without bond in the Cumberland County Jail for twelve (12) days until he plead guilty in Cumberland County Criminal Court (receiving a 11 month, 29 day sentence with time served and the balance on supervised probation.) No bond was ever set for him. Mr. Duff lives in Cumberland County, Tennessee. Mr. Duff eventually made his bond and is out of jail. Ex. 3

17. **Plaintiff Jacob Ryan Edmonds** is a 23-year-old man. He was arrested on November 23, 2022 and Magistrate Christy Eldridge set a total bond for him at $20,000. Mr. Edmonds spent several weeks in jail before eventually made his bond and is out of jail. on Mr. Edmonds lives in Crossville, Tennessee. Ex. 4

18. **Plaintiff John Edward Healy** is a 78-year-old man. He was arrested on October 18, 2022 and held without bond in the Cumberland County Jail for two (2) days before an initial appearance before Judge Worley set a $7500 bond. He spent 20 days in jail unable to make his cash bond because he lived alone and his wallet with his credit card in it was on his desk at home and he had no way to ask anyone to retrieve the wallet for him. He spent 20 days in jail before he could plead guilty in Cumberland County Criminal Court to a felony and begin serving a one year sentence. Mr. Heady states that if he could have gotten a bond amount he could make, he would not have plead guilty. Mr. Healy lives in Cumberland County, Tennessee. Ex. 5

19. **Plaintiff Derek Alan Litman** is a 53-year-old man. He was arrested on December 13, 2022 on an unsigned General Session Court Attachment for failing to come to a pay docket to pay his court costs; the attachment stated that he was to "serve 5 days" with an OR (own

recognizance) bond.    Two (2) days after being arrested, he appeared before Judge Worley on December 15, 2022, the judge told him he had to serve his five (5) days and he would be released. Mr. Litman will likely lose his job because he spent 5 days in jail.  He lives in Crossville, Tennessee. Ex. 6

20.    **Plaintiff Haylee N. Smith** is a 26-year-old woman. She was arrested on November 24, 2022 on a General Session Court Attachment for failing to come to a pay docket to pay her court costs which stated that she was to "serve 10 days" with a $500 bond.    When she appeared before Judge Worley on November 28, 2022 she told Judge Worley that she could not make the $500 bond; Judge Worley waived the remainder of his 10 day sentence and released her.  Ms. Smith lives in Cumberland County, Tennessee. Ex. 7

21.    **Plaintiff Michael Everitt Stottlemire** is a 43-year-old man. He was arrested on October 28, 2022 and Magistrate Greg Watson set a total bond for him at $5000.  Mr. Stottlemire lives in Crossville, Tennessee. Mr. Stottlemire eventually made his bond and is out of jail. Ex. 8

22.    **Plaintiff Jeff Tabor**  is a 43-year-old man. He was arrested on November  18, 2022 and Magistrate Greg Watson set his bond at "hold without bond" in the Cumberland County Jail for four (4) days and three (3) nights until he had his initial appearance before Judge Worley set his bond at $10,000; at this initial appearance, Judge Worley asked him "Are you going to make that bond?".  Mr. Tabor was unable to make his money bond and was subsequently served with a violation of probation with a hold without bond and on December 15, 2022 he was still incarcerated.  Mr. Tabor lives in Crossville, Tennessee.  Ex. 9

23.    **Plaintiff Douglas Allen Trout** is a 49-year-old man. He was arrested on November 18, 2022 and Magistrate Jennifer Phillips Cross set an initial bond for him at $12,000. Mr. Trout has only disability payments for income and is unable to make the $12,000 bond.  Mr. Trout lives in Crossville, Tennessee. Mr. Trout eventually made his bond and is out of jail. Ex. 10

24.     **Plaintiff Addison P. Woody** is a 29-year-old woman. She was arrested on November 23, 2022 and Magistrate Christy Eldridge set an initial bond for her at $30,000. When she appeared before Judge Worley on November 28, 2022 she told Judge Worley that she could not make the $30,000 bond; Judge Worley appointed her the public defender and moved her case to December 1, 2022 without addressing Ms. Woody's inability to make her bond.   Ms. Woody eventually made her bond and is out of jail. Ex. 11

25.     **Defendant Sheriff Casey Cox** is the head of the Cumberland County Sheriff's Office and keeper of the Cumberland County Jail. Sheriff Cox  has custody over the individuals in the Jail during their booking and for the duration of their pretrial detention. The Sheriff's Office enforces secured financial conditions of release by detaining people who have been arrested and cannot pay the secured money bail required by the General Sessions Court. Sheriff Casey Cox is sued in his official capacity for injunctive and declaratory relief.

26.     **Defendant Amanda Worley** is the Judge of the General Sessions Court in Cumberland County, which has jurisdiction over bail proceedings. Judge Worley, in her official capacity.  Judge Worley conducts initial-appearance hearings and is responsible for determining release conditions. *See* 9 Tenn. Prac. Crim. Prac. & Procedure § 3:2; Tenn. Code Ann. § 40-4-101(6). When a person is charged with a bailable offense, Judge Worley is authorized either to release that person on her own recognizance pursuant to Tenn. Code Ann. §§ 40-11-115, or to admit that person to bail pursuant to Tenn. Code Ann. §§ 40-11-117, - 118, and -122. Judge Worley retains authority to determine the conditions of bail "at any time prior to or at the time the defendant is bound over to the grand jury." Tenn. Code Ann. § 40-11-104. Judge Worley has a practice of requiring unattainable release conditions and bond amounts based on the crime and setting bond amounts without any substantive findings or procedural safeguards, let alone the constitutionally required ones.

27.     Judge Worley has supervisory authority over judicial commissioners in Cumberland County. *Cf.* Tenn. Code Ann. § 40-1-111(a)(1)(B)(iii).  Judge Worley has authority to appoint and remove judicial commissioners of the court. Tenn. Code Ann. § 40-5-204. Additionally, under state law, Judge Worley maintains supervisory authority over the judicial commissioners, including over how they determine conditions of release in the first instance. Tenn. Code Ann. § 40-1-111(a)(1)(A)(iv). Judge Worley is sued in her official capacity for declaratory relief.

28.     **Defendants Jennifer Phillips Cross, Christy Eldridge and Greg Watson** (collectively, "Judicial Commissioners") are judicial commissioners, whose duties include making probable cause and money bail determinations. Tenn. Code Ann. § 40-5-201(b). Judicial commissioners are authorized to make these bail determinations at the time of booking and at the initial appearance. Tenn. Code Ann. § 40-11-105(a). When determining financial conditions of release, Defendant Judicial Commissioners do not provide any notice or opportunity to be heard, any opportunity to present or challenge evidence, or any findings by any legal or evidentiary standard concerning arrestees' ability to pay money bail or the necessity of pretrial detention, or an explanation of the reasons for their pretrial release and detention decisions on the record. They also do not provide counsel at or before the proceeding. The Judicial Commissioners are sued in their official capacities for declaratory relief.

## IV.     <u>Relevant Non-Parties</u>

**Wesley Bray and Gary McKenzie** are the Criminal Court Judges for the Circuit Court for the Thirteen Judicial District, which encompasses Cumberland, Putnam, Dekalb, White Clay, Pickett and Overton Counties in the upper Cumberland region of Tennessee.   Both Judges sit in Cumberland County numerous times a year.   Both Judges preside over all Thirteenth Judicial District arraignments, deadline dockets and jury trials in criminal cases.  In addition, all grand jury proceedings

take place in the Circuit Court. Grand jury proceedings take place several times a year in Cumberland County.

### V.    Categories of Named Plaintiffs

**A. Several Name Plaintiffs Were Held in Jail Without Bond**

**B. Several Named Plaintiffs Were in Jail Because They Could Not Pay the Monetary Amount Required For Their Pretrial Release**

**C. Two Names Plaintiffs Were Held In Jail For Failing To Come to Court On A Pay Docket**

**D. Because Defendants Do Not Provide a Constitutional Pretrial Release Process People Are Incarcerated Solely Due to Their Poverty**

12.    As a matter of practice, Defendants require secured financial conditions of pretrial release for almost all people arrested in Cumberland County.

The Pretrial Release and Detention Process in Cumberland County

13.    When an arrest warrant is issued prior to arrest, a police officer presents an affidavit of complaint to the clerk or deputy clerk, who finds probable cause and signs off on the arrest. After the warrant is approved, a judicial commissioner or Judge Worley sets a financial condition of release on the warrant.

14.    In the case of warrantless arrests, after an individual is arrested and booked into the Cumberland County Jail, the arresting officer procures from a Judicial Commissioner a post-arrest warrant on which a financial condition of pretrial release is affixed using the same procedure as for a pre- arrest warrant. Thus, all people arrested in Cumberland County have their conditions of release initially determined—in their absence—by either Defendant Judge Worley, one of the Defendant Judicial Commissioners (collectively, "initial bail-setters").

15.    The initial bail-setters impose financial conditions of release without regard to the

individual's ability to pay secured money bail, their ties to the community, or other constitutionally relevant factors. Despite lacking any knowledge of an individual's financial circumstances, the initial bail-setters have a practice of requiring monetary conditions of release in the vast majority of cases. Thus, the initial bail-setters determine an amount of money bail based only on the charges on which the arrested person has been booked and the nature of the allegations in the probable cause statement, and, when available, any prior convictions and jail-bookings in Cumberland County.

16.     For people who cannot pay, the money bail order written on their warrant operates as a *de facto* detention order because they cannot obtain the amount of money required for their release.

17.     Individuals who cannot pay the amount of money bail required for their release remain in jail and await their "initial appearance."[4] In Cumberland County, a judicial commissioner (or very infrequently, Judge Worley) conducts the initial appearance, without the presence of the arrested person present. Initial appearances in front of Judge Worley take place only on Mondays and Thursdays.  Initial appearances are very brief proceedings at which the judicial officer informs arrested persons of the charges against them, their conditions of release, and their next court date. Indigent individuals are not represented by counsel at these proceedings and have no opportunity to raise any challenge to their ongoing pretrial detention.

---

[4] This proceeding is sometimes referred to as an "arraignment" even though it does not take place in criminal court. *See* 9 Tenn. Prac. Crim. Prac. & Procedure § 3:2 (differentiating between an "initial appearance" before a magistrate and an "arraignment" before the criminal court following an indictment).

18.      At the initial appearance, Judicial Commissioners and Judge Worley often reaffirm the *de facto* detention orders set at the warrant stage without making any finding that pretrial detention is required to serve a compelling government interest, as is constitutionally required.  And they do so without any meaningful process, let alone the detailed procedures required by the Due Process Clause, including: a timely individualized hearing; notice of the issues to be determined; representation by counsel; the opportunity to present and confront evidence and make arguments; findings on the record explaining the basis for any condition of release imposed and the evidence relied on; and, if such conditions will result in pretrial detention, a finding by clear and convincing evidence that pretrial incarceration is necessary because no alternative conditions or combination of conditions would reasonably ensure the individual's future court appearance or the safety of the community.  As a result, the monetary conditions of release affixed at the warrant stage remain after the initial appearance and, because the arrestee cannot afford to pay, continue to function as *de facto* orders of pretrial detention.

19.      Defendant Judicial Commissioners do not provide at the initial appearance an opportunity to contest conditions of pretrial release, including money bail, and refuse to hear requests from arrestees to change the conditions. If individuals attempt to request a change to their conditions of release, they are not able to. Rather, they must wait to appear before and Judge Worley and make a request for bond to be set or lowered.  Judge Worley routinely asks the arrestee "if they can make their bond" and when the response from the arrestee is "No" states that the bond is appropriate for the offense and appoints the public defender to represent them and to talk to their lawyer.  The public offender may occasionally ask for the bond to be lowered. While it is possible for the public defender to file a motion for review of their pretrial-release conditions, such motions are rare. At the initial appearance, detainees are permitted to speak only to inform the court whether they plan to retain counsel or would like a public defender to be

appointed to represent them.

20.     If an individual requests and is appointed a public defender, Judge Worley (in Court with an assistant public defender often present) that the Court has appointed the Public Defender to represent the arrestee and the case moved to the next Thursday Judge Worley is holding court.

21.     After the initial appearance before a Judicial Commissioner, individuals who cannot pay their financial conditions of release remain detained while awaiting their first appearance before Judge Worley in General Sessions Court. This preliminary hearing occurs as many as 14 business days from the initial appearance (especially over holiday weekends). This hearing is typically the first opportunity for indigent defendants to meet their court-appointed counsel. Because there is no real mechanism in Cumberland County for a detainee to request review of conditions of release until an individual meets with counsel, the preliminary hearing is also typically the first opportunity for defendants to attempt to challenge a *de facto* order of pretrial detention.

22.     Even when—at or after the preliminary hearing—defense counsel seeks to modify the bail amount initially imposed at the warrant stage, Defendant Worley fails to consider constitutionally and statutorily required factors, including ability to pay, or to provide the substantive findings and procedural safeguards required by the Constitution.

23.     Defendants Judge Worley and Judicial Commissioners routinely require money bail in amounts unattainable to the either class members or the average resident of Cumberland County, one-eighth of whom live below the poverty line.[3]

.

---

[3] Census Bureau data.  See FN 2

24.     Judges Bray and McKenzie, the Criminal Court Judges for the Circuit Court for the

Third Judicial Circuit, sit in Cumberland County itself numerous times a year, and grand juries

are convened only six times a year. As a result, individuals subject to *de facto* pretrial detention

due to inability to pay who are charged with felonies will typically wait months before their case

has been indicted by a grand jury.  Individuals who have not yet been indicted by the grand jury

are not entitled to discovery in their case as a matter of local practice, the Tennessee Rules of

Criminal Procedure (which generally do not apply to General Sessions Court, see T. Rules of

Criminal Procedure, Rule 1 and specifically do not apply to the rule governing discovery)  and

state law. Those who cannot purchase their release are routinely desperate to resolve their cases in

order to escape the inhumane and dangerous conditions at the Cumberland County Jail. Thus, the

vast majority of pretrial detainees in General Sessions court in Cumberland County will plead

guilty before their public defender has received any information about their case, done any

investigation, received exculpatory evidence, or been able to evaluate the legal and factual

defenses available.

25.     As a result of Defendants' policies and practices, indigent individuals are subject

to extended periods of wealth-based pretrial detention before being provided the hearing on their

conditions of release that federal law requires.

**E.  Cumberland County's Unconstitutional Pretrial Policies and Practices Harm
     Individuals and Communities.**

26.     Due to Defendants' unconstitutional policies and practices, presumptively innocent

individuals are detained in Cumberland County every day solely because they are too poor to pay the monetary release conditions imposed without any hearing, let alone a hearing that meets constitutional standards.

27.     Pretrial incarceration harms individuals' lives beyond their loss of liberty and the degrading and life-threatening conditions they endure in jail. Other consequences of pretrial incarceration include loss of income because individuals often lose their jobs while detained; loss of housing and missed payments on utilities and other bills because individuals cannot make rent and other payments when jailed; loss of physical and/or legal custody of children; an increase in mental illness because conditions in jail can put an individual under extreme stress and restrict access to needed medications, exacerbating or even causing further trauma and mental illness; a high likelihood of assault, including sexual assault, especially in the first few days of incarceration, exposure to communicable diseases; inability to exercise; deprivation of sunlight and fresh air; and forcible separation from children and family.

28.     In addition, being detained pretrial has a significant impact on the legal outcome of a person's case. Detained individuals are more likely to plead guilty just to shorten their jail time, even if they are innocent.[6] They have a harder time preparing a defense, gathering evidence and witnesses, and meeting with their lawyers. Studies show that those detained pretrial face worse outcomes at trial and sentencing than those released pretrial, even when charged with the same offense and controlling for all other factors.[7] Controlling for other factors, a person who is detained pretrial is 13 percent more likely to be convicted and 25 percent more likely to plead guilty than a person who is not detained.[8] And those detained pretrial are more likely to receive longer jail sentences.[9]  A person's pretrial detention thus has an irreparable impact on the outcome of a criminal case, and on the person's life for years afterward.

29.     Thus, Defendants' practice of issuing *de facto* detention orders by requiring

unattainable monetary conditions of pretrial release without substantive findings or procedural safeguards results in devastating life consequences to individuals based solely on their access to cash.

30.     Wealth-based pretrial detention also makes the community less safe. First, wealth-based detention unnecessarily jails those who could be released safely into the community. Several studies have shown that just two or three days in pretrial detention increases the likelihood that an individual will commit a crime in the future, and increases the future risk level of even low-risk defendants.[11] People who are detained for a few days following arrest are also more likely to miss court dates in the future, all because of the destabilizing effects of short periods in jail.[12] In other words, detention based on poverty for just a few days increases recidivism. Second, wealth-based pretrial systems release individuals based only on their ability to pay and without any assessment of their risk of flight or dangerousness. Consequently, if the government believed that certain individuals needed monitoring or supervision to mitigate their risk of flight or dangerousness, they would receive neither if released by paying money bail.

---

[6] *See* Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization* 15, 18–19 (May 2, 2016), https://goo.gl/OW5OzL ("Criminal defendants assessed bail amounts appear frequently unable to produce the required bail amounts, and receive guilty outcomes as a result. Entered guilty pleas by defendants unwilling to wait months prior to trial and unable to finance bail likely contribute to this result.").

[7] *See* CHRISTOPHER LOWENKAMP ET AL., INVESTIGATING THE IMPACT OF PRETRIAL DETENTION ON SENTENCING OUTCOMES, LAURA AND JOHN ARNOLD FOUNDATION 12, 14 (2013), https://university.pretrial.org/viewdocument/investigating-the-im (those detained for the entire pretrial period are more likely to be sentenced to jail and prison—and receive longer sentences—than those who are released at some point before trial or case disposition); Megan T. Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 34 J.L. ECON. & ORG. 511, 535-36 (2018) ("Pretrial detention leads to an expected increase of 124 days in the maximum days of the incarceration sentence, a 42% increase over the mean.").

[8] *See* Stevenson, *supra* note 7, at 18; *see also* Gupta, et al., *supra* note 6, at 19 (finding a increase in the likelihood of conviction using the same data).

[9] *See* Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 STAN. L. REV. 711, 786-87 (2017).

[10] Travis Dorman, *Man Dies While Waiting to Be Booked into Cumberland County Jail*, Knoxville News Sentinel (Aug. 12, 2019), https://www.knoxnews.com/story/news/local/2019/08/12/man-dies-while-waiting-booked-into-Cumberland-county-jail/1993060001/.

[11] *See* Department of Justice, National Institute of Corrections, *Fundamentals of Bail*, 15-16 (2014), https://goo.gl/jr7sMg ("[D]efendants rated low risk and detained pretrial for longer than one day before their pretrial release are more likely to commit a new crime once they are released, demonstrating that length of time until pretrial release has a direct impact on public safety."); CHRISTOPHER T. LOWENKAMP ET AL., *supra* note at 7 (studying 153,407 defendants and finding that "when held 2–3 days, low risk defendants are almost 40 percent more likely to commit new crimes before trial than equivalent defendants held no more than 24 hours"); Paul Heaton et al., *supra* note 9, at 768 ("While pretrial detention clearly exerts a protective effect in the short run, for misdemeanor defendants it may ultimately service to compromise public safety," and finding that in a representative group of 10,000 misdemeanor offenders, pretrial detention would cause an additional 600 misdemeanors and 400 felonies compared to if the same group had been released pretrial).

[12] *See also* Gupta et al., *supra* note 6, at 19.

31.     Other jurisdictions around the country do not detain people pretrial based on their access to cash.  Instead of relying on money, these jurisdictions release arrestees with unsecured financial conditions, non-financial conditions, and pretrial supervision practices and procedures that can help increase court attendance and public safety without requiring detention. Such non-monetary conditions of release include, but are not limited to: unsecured bonds, reporting obligations, phone and text message reminders of court dates, rides to court for those without transportation or a stable address, substance abuse treatment, mental health treatment, counseling, alcohol monitoring devices, stay-away orders, or, in extreme cases of particular individualized risk, electronic monitoring, curfew, and home confinement.

32.     Jurisdictions that rely on non-monetary conditions of release do not sacrifice public safety or court attendance; they enhance it.  For example, the agency in charge of pretrial supervision in Washington, D.C., found that "[t]he high nonfinancial release rate has been accomplished without sacrificing the safety of the public or the appearance of people in court."[13] Specifically, "Agency data show that 90 percent of released people make all court appearances and that 91 percent complete the pretrial release period without any new arrests."[14]

33.     The federal system also prohibits wealth-based detention, expressly preventing a judicial officer from imposing a financial condition of release that results in pretrial detention. 18 U.S.C. § 3142(c)(3). It further creates a requirement that an arrested person be released upon personal recognizance or execution of an unsecured appearance bond unless findings are made by a judicial officer that other conditions are necessary to assure appearance and public safety. 18 U.S.C. § 3142(b).  Although pretrial detention is permitted, it may be imposed only after a hearing

---

[13] PRETRIAL JUSTICE INSTITUTE, THE PRETRIAL SERVICES AGENCY FOR THE DISTRICT OF COLUMBIA: LESSONS FROM FIVE DECADES OF INNOVATION AND GROWTH  2 (2018), https://perma.cc/8KAD-TY5H.
[14] Id.

Case 2:22-cv-00060     Document 1     Filed 12/16/22     Page 18 of 27 PageID #: 18

with rigorous procedural protections, including the right to be represented by counsel; the opportunity to testify, present witnesses, and cross-examine witnesses; and a requirement that any pretrial detention order be based on a finding on the record that no conditions would ensure the person's appearance and the safety of the community. 18 U.S.C. § 3142 (f). The federal practice has not harmed court appearance rates or public safety.[15]

34.    Pretrial detention based solely on wealth is consistently more expensive to administer than effective pretrial release programs.[16] Without relying on a person's ability to afford cash bail, pretrial release programs can save taxpayer expense while maintaining high public safety and court appearance rates associated with wealth-based practices like Defendants', which rely solely on access to money.

## VI.    Class Action Allegations

35.    Named Plaintiffs bring the Claims in this action, on behalf of themselves and all others similarly situated, as a class action under Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(2).

36.     Under Federal Rule of Civil Procedure 23(a), certification of a class is appropriate where: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

37.    Plaintiffs request that the Court certify a class composed of all people who are or will be arrested and charged with criminal offenses and who are or will be detained in the Cumberland County Jail because of Defendants' bail practices

A.  Rule 23(a)

38.    **_Numerosity._** The precise size of the Class is unknown by Plaintiff because it is

forward-looking, but it is substantial, given that hundreds of arrests are each made every year in the Cumberland County, Tennessee. Joinder of these unknown future members is impracticable.

39. Many of the class members are low-income individuals who will likely lack financial resources to bring an independent action or to be joined in this action. Joinder of every member of the class would be impracticable.

40. ***Commonality.*** The relief sought is common to all class members. Named Plaintiffs seek relief from Defendants' hold without bail policies, money bail policies, practices, and procedures, which violate the rights of the Class members. Named Plaintiffs also seek relief declaring that Defendants' policies, practices, and procedures regarding the setting of bail violate the Class members' constitutional rights.

41. Among the most important, but not the only, common questions of fact are:

    a. Whether Defendants impose monetary conditions of release that result in detention without consideration of class members' ability to pay;

    b. Whether Defendants require pretrial conditions of release that result in detention without any substantive findings that detention is necessary;

    c. Whether, when, and how Defendants determine what conditions of pretrial release should be and whether, for example, Defendants provide a timely individualized hearing; notice of the issues to be determined; representation by counsel; the opportunity to present and confront evidence and make arguments; findings on the record explaining the basis for any condition of release imposed and the evidence relied on; and, if such conditions will result in pretrial detention, a finding by clear and convincing evidence that pretrial detention is necessary because no alternative conditions or combination of conditions would reasonably ensure the individual's future court appearance and the safety of the community; and

    d. How long individuals arrested must wait in jail after arrest before they have an opportunity to challenge pretrial release conditions, raise their inability to pay for their release or to request alternative, non-financial conditions.

42. Among the most important common question of law are:

    a. Whether Defendants' detention of poor arrestees without the substantive findings the Constitution requires before a presumptively innocent person may be ordered Whether requiring an individual to pay money to secure release from pretrial

detention without an inquiry into or findings concerning the individual's ability to pay the amount required, and without meaningful consideration of and findings concerning less restrictive alternative conditions of release, violates the Fourteenth Amendment's Due Process and Equal Protection clauses;

b. Whether it is lawful to impose a secured financial condition of release that operates as a *de facto* order of pretrial detention because of a person's inability to pay without complying with the procedural safeguards, applying the correct legal standard, and making the substantive findings required for an order of preventive pretrial detention; and

c. Whether setting of pretrial release conditions without affording an individual counsel violates the Sixth Amendment and the Fourteenth Amendment's Due Process Clause.

43. **Typicality.** Named Plaintiffs' claims are typical of the claims of the other members of the Class, and they have the same interests in this case as all other Class members that they represent. Each of them suffers injuries from the failure of Defendants to comply with the Constitution: they are each confined in jail because they could not pay their secured monetary bond amount. Resolution of the constitutionality of Defendants' money bail practices will determine the claims of Named Plaintiffs and every other Class member.

44. If Named Plaintiffs succeed in the claim that Defendants' policies and practices concerning wealth-based detention violate their constitutional rights, that ruling likewise will benefit every other member of the Class.

45. **Adequacy.** Named Plaintiffs will fairly and adequately represent the interests of the proposed Class they seek to represent.

46. Named Plaintiffs have no interests separate from or in conflict with those of the proposed Class they seek to represent as a whole and Named Plaintiffs seek no relief other than the declaratory and injunctive relief, which is sought on behalf of the entire proposed Class they seek to represent.

47.      ***Class Counsel.***  Named Plaintiffs are represented by John B. Nisbet III, who although has no experience in class actions, does have experience in litigating complex civil rights matters in federal court and, due to Counsel's 30 plus years involved in the practice of criminal law—including four (4) years as an assistant attorney general writing appellate briefs to the Tennessee Court of Criminal Appeals, three (3) years as an assistant district attorney general and thirteen (13) years as an assistant district public defender (with seven (7) of those years in Cumberland County) has  extensive knowledge of both the details of Defendants' practices and the relevant constitutional and statutory law.  Counsel has the resources, expertise, and experience to prosecute this action.

B.  Rule 23(b)(2)

48.      Class certification is appropriate because Defendants have acted in the same unconstitutional manner with respect to all class members: Defendants require all arrestees to pay for their release. Those who can pay are released and those who cannot are detained.

49.      The Class therefore seeks declaratory and injunctive relief that Defendants violate the Named Plaintiffs' and Class members' rights under the Fourteenth and Sixth Amendments by requiring secured financial conditions of release without prompt and individualized release hearings that provide appropriate substantive findings and adequate procedural protections. Because the putative Class challenges Defendants' practices as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the Class, Rule 23(b)(2) certification is appropriate and necessary.

C.  Rule 23(g)

50.      Federal Rule of Civil Procedure 23(g) requires that the court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1). Class counsel must "fairly and adequately

represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

51.     For reasons set forth in the contemporaneously filed Memorandum in Support of Motion for Class Certification, undersigned counsel meet the factors the court must consider under Rule 23(g): (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class."

## VII.     Claims for Relief

### COUNT I

### Defendants Violate Plaintiffs' Fundamental Fourteenth Amendment Due Process Right to Pretrial Liberty

52.     Plaintiffs )for each claim, the term "Plaintiffs" refers to both the Named Plaintiffs and members of the proposed class, unless otherwise specified) incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

53.     Freedom from imprisonment lies at the heart of the liberty that the Due Process Clause protects. *See, e.g.*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary government action."). Pretrial detention infringes upon this right and may only be required if it is narrowly focused to serve compelling government interests.

54.     The state's interest at the pretrial stage is limited to ensuring the accused will appear for trial and protecting the public from danger associated specifically with that individual's release.

55.     Here, Plaintiffs have been detained on *de facto* detention orders and deprived of pretrial liberty through imposition of unattainable financial conditions without any court

considering Plaintiffs' likelihood of appearing at future court appearances and whether Plaintiffs pose any danger to the community, and without any court making a substantive finding that no alternatives to such *de facto* pretrial detention would serve the government's interests.

## COUNT II

### Defendants Violate Plaintiffs' Fourteenth Amendment
### Right to Procedural Due Process

56. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

57. Procedurally, orders of pretrial detention may be entered only after rigorous procedures have been met. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976). These procedures include, but are not necessarily limited to: a timely individualized hearing; notice of the issues to be determined; representation by counsel; the opportunity to present and confront evidence and make arguments; findings on the record explaining the basis for any condition of release imposed and the evidence relied on; and, if such conditions will result in pretrial detention, a finding by clear and convincing evidence that pretrial incarceration is necessary because no alternative conditions or combination of conditions would reasonably ensure the individual's future court appearance and the safety of the community. Procedural due process requires procedures sufficient to protect Plaintiffs' substantive rights to pretrial liberty and against wealth-based detention.

58. Here, Plaintiffs were provided none of these constitutionally required procedures before being detained because they could not pay.

## COUNT III

### Defendants Violate Plaintiffs' Sixth Amendment Right to Counsel
### by Not Providing Them with Counsel at Proceedings Resulting in Pretrial Detention

59. Plaintiffs incorporate by reference each and every allegation contained in the

preceding paragraphs as if set forth fully herein.

60.     The Sixth Amendment to the United States Constitution guarantees criminal

defendants the right to counsel at each post-attachment critical stage of the criminal process. *See,*

*e.g.*, *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) ("The Sixth Amendment requires effective

assistance of counsel at critical stages of a criminal proceeding.     The constitutional guarantee

applies to pretrial critical stages . . . ."). Bail determinations are post-attachment critical stages for

which counsel must be provided.

61.     Defendants' failure to provide counsel at hearings that result in pretrial detention

that prejudices both Plaintiffs' immediate liberty interests and the ultimate outcomes of their cases.

62.     Defendants violate the Sixth Amendment by conducting critical pretrial release and

detention proceedings without providing counsel.

## VIII.   **Prayer for Relief**

63.      WHEREFORE, Plaintiffs respectfully request the following relief:

a.     Certification of a class under Rules 23(a) and (b)(2) of the Federal Rules of
Civil Procedure, represented by Named Plaintiffs;

b.     A declaration that Defendants violate Named Plaintiffs' and Class
members' rights under the Fourteenth Amendment by requiring secured financial
conditions of release without inquiry into or findings concerning their ability to pay, or
meaningful consideration of and findings concerning whether alternative non-financial
conditions of release serve the government's interests;

c.     A declaration that Defendants violate Named Plaintiffs' and Class
members' due-process rights by imposing financial conditions of release that result in
detention without conducting a prompt individualized release hearing with adequate
procedural safeguards including the following:

● Notice to the individual arrested of the critical factual and legal
issues at stake in the proceeding;

● If a financial condition of release is being considered, a
determination of each individual's ability to pay money bail and the amount of

money they can afford;

- An opportunity for the individual arrested to be heard concerning their ability to afford money bail and what nonmonetary release conditions, if any, are necessary.

- An opportunity for the individual arrested to present evidence, contest the government's evidence, and to make arguments concerning the imposition of conditions of release;

- The provision of counsel if the individual is unable to afford counsel;

- Before imposing pretrial detention, substantive findings on the record by clear and convincing evidence, including the evidence relied on and reasons for such findings, that detention is necessary because no less restrictive alternatives to detention address the state's compelling interests;

d.     A declaration that Defendants violate Named Plaintiffs' and Class Members' right to counsel under the Sixth Amendment by failing to provide counsel to indigent people at pretrial release and detention hearings;

e.     A temporary restraining order requiring the Sheriff to release Named Plaintiffs unless they are provided the procedures stated above;

f.     An order and judgment preliminarily and permanently enjoining the Sheriff from enforcing financial conditions that result in *de facto* pretrial detention without findings that pretrial detention is necessary to meet a compelling government interest and without the procedural safeguards required for confidence in that substantive outcome;

g.     An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

h.     Such other relief as the Court deems just and appropriate.

Dated:  December 16, 2022                    Respectfully submitted,

                                             /s/ John B. Nisbet III
                                             John B. Nisbet III (TN Bar #13364)
                                             P.O. Box 531
                                             Livingston, TN 38570
                                             931.267.6203
                                             nisbetcle@gmail.com

                                             **ATTORNEY FOR PLAINTIFFS**

Case 2:22-cv-00060    Document 1    Filed 12/16/22    Page 27 of 27 PageID #: 27